**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LUCIA MARETT, on behalf of herself and all   :
others similarly situated,   :
  :
                   Plaintiff,   :
  :
       v.   :
  :
RED LOBSTER HOSPITALITY, LLC,   :
  :
               Defendant.   :
  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 1:16-CV09052 (JPO)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFF'S CLASS ACTION COMPLAINT FOR**
**FAILURE TO STATE A CLAIM AND LACK OF SUBJECT MATTER JURISDICTION**

**BAKER & HOSTETLER LLP**

Amy J. Traub
atraub@bakerlaw.com
Amanda L. Van Hoose Garofalo
agarofalo@bakerlaw.com
45 Rockefeller Plaza
New York, New York 10111
Tel: 212 589-4200
Fax: 212 589-4201

Joyce Ackerbaum Cox
jacox@bakerlaw.com
(*pro hac vice* to be filed)
Mary Caroline Miller
mcmiller@bakerlaw.com
(*pro hac vice* to be filed)
200 S. Orange Avenue
Ste. 2300
Orlando, FL 32801
Tel: 407 649-4000
Fax: 407 841-0168

Attorneys for *Red Lobster Hospitality, LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND ...................................................................................2

LEGAL ARGUMENT ...........................................................................................4

    **I.**    Marett's Claims Should Be Dismissed Pursuant To Rule 12(b)(6).......................4

        **A.**    Marett Has Failed To State A Claim Upon Which Relief Can Be
            Granted Under Title III Of The ADA. .......................................................4

            1.    Marett Has Not Alleged That She Sought Access To A Place
                Of Public Accommodation Owned Or Operated by Red
                Lobster. .........................................................................................5

                i.    The Plain Language Of Title III And The DOJ's
                      Implementing Regulations Clearly Limit The Term
                      "Place Of Public Accommodation" To Physical
                      Facilities. ......................................................................6

                ii.    The Majority Of Courts Addressing The Issue Have
                      Held That Websites Are Not Places Of Public
                      Accommodation Under Title III. .........................................9

                iii.    Marett Has Failed To Save Her Complaint By Pleading
                      A Sufficient Nexus Between Red Lobster's Website
                      And Any Physical Red Lobster Restaurant. .....................10

            2.    Even If Red Lobster's Website Is A Place of Public
                Accommodation, Marett Has Not Alleged That Red Lobster
                Engaged In Any Conduct Made Unlawful By Title III. ...............12

                i.    Red Lobster Has Not Engaged In Unlawful
                      Discrimination As Defined By Title III And The
                      DOJ's Implementing Regulations......................................12

                ii.    Non-Binding Guidance Mentioned Or Issued By The
                      DOJ Does Not Create An Actionable Cause Of Action
                    Under Title III. ..............................................................15

                    a.    Neither The DOJ's Regulations Applicable To
                        Federal Agencies, Nor WCAG, Are Binding
                        On Places Of Public Accommodation. .................15

        b.     The DOJ's ANRP Does Not Create New Obligations For Places Of Public Accommodation. .......................................................18

    3.     Marett Has Failed To State a Claim Upon Which Relief Can Be Granted Under The NYSHRL, The NYCRL, And The NYCHRL. ...............................................................19

**II.**    Marett's Claims Should Be Dismissed Pursuant To Rule 12(b)(1). ......................21

    1.     Marett's Claims Are Moot. ...........................................................21

    2.     The Court Does Not Have Supplemental Jurisdiction Over Marett's State Law Claims Seeking Money Damages. .................24

CONCLUSION..............................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Access Now, Inc. v. Sw. Airlines, Co.*,
  227 F. Supp. 2d 1312 (S.D. Fla. 2002) ..................................................................5, 7, 11, 15

*AFSCME v. Am Int'l Grp., Inc.*,
  462 F.3d 121 (2d Cir. 2006)...............................................................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................................4

*Bebry v. ALJAC LLC*,
  954 F. Supp. 2d 173 (E.D.N.Y. 2013) ................................................................................20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................................4, 12

*Brenchley v. Vill. of Phoenix*,
  No. 5:01 CV 0190, 2005 WL 2437027 (N.D.N.Y. Sept. 30, 2005) .......................................22

*Broderick v. Research Found. of State Univ. of N.Y.*,
  No. 10-CV-3612 JS ETB, 2010 WL 3173832 (E.D.N.Y. Aug. 11, 2010) .............................20

*Brooklyn Ctr. for Indep. of Disabled v. Bloomberg*,
  980 F. Supp. 2d 588 (S.D.N.Y. 2013)................................................................................20

*Camarillo v. Carrols Corp.*,
  518 F.3d 153 (2d Cir. 2008).................................................................................................5

*Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*,
  37 F.3d 12 (1st Cir. 1994)...................................................................................................10

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002).................................................................................................2

*Christensen v. Harris Cnty.*,
  529 U.S. 576 (2000).......................................................................................................8, 17

*County of Los Angeles v. Davis*,
  440 U.S. 625 (1979).........................................................................................................21

*Cullen v. Netflix, Inc.*,
  880 F. Supp. 2d 1017 (N.D.Cal. 2012) ...............................................................................10

*Doe v. Mut. of Omaha Ins. Co.*,
  179 F.3d 557 (7th Cir. 1999) ............................................................10

*Doyle v. Midland Credit Mgmt., Inc.*,
  722 F.3d 78 (2d Cir. 2013)................................................................23

*Earll v. eBay, Inc.*,
  No. 5:11–cv–00262–JF (HRL), 2011 WL 3955485 (N.D.Cal. Sept. 7, 2011) .......................10

*EEOC v. Staten Island Sav. Bank*,
  207 F.3d 144 (2d Cir. 2000).............................................................17

*Flast v. Cohen*,
  392 U.S. 83 (1968)...........................................................................21

*Ford v. Schering-Plough Corp.*,
  145 F.3d 601 (3d Cir. 1998)...........................................................8, 9

*Giambattista v. Am. Airlines, Inc.*,
  584 F. App'x 23 (2d Cir. 2014) .......................................................19

*Grove v. De La Cruz*,
  407 F. Supp. 2d 1126 (C.D. Cal. 2005) .........................................22

*Hartnett v. Fielding Graduate Institute*,
  400 F. Supp. 2d 570 (S.D.N.Y.2005)................................................19

*Hernandez v. Berlin Newington Assocs., LLC*,
  No. 3:10CV1333 DJS, 2015 WL 418128 (D. Conn. Jan. 30, 2015) ....................22

*Iron Arrow Soc'y v. Heckler*,
  464 U.S. 67 (1983)...........................................................................21

*Jancik v. Redbox Automated Retail, LLC*,
  No. SACV 13–1387–DOC, 2014 WL 1920751 (C.D. Cal. May 14, 2014) .................11

*Kreisler v. Second Ave. Diner Corp.*,
  No. 10 Civ. 7592(RJS), 2012 WL 3961304 (S.D.N.Y. Sept. 11, 2012)................20

*Leonard F. v. Israel Disc. Bank of N.Y.*,
  199 F.3d 99 (2d Cir. 1999).................................................................8

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000)............................................................21

*J.S. ex rel. N.S. v. Attica Cent. Sch.*,
  386 F.3d 107 (2d Cir. 2004)............................................................21

*Nat'l All. for Accessibility, Inc. v. Walgreen Co.*,
No. 3:10-CV-780-J-32-TEM, 2011 WL 5975809 (M.D. Fla. Nov. 28, 2011) .......................22

*Nat'l Ass'n of the Deaf v. Netflix, Inc.*,
869 F. Supp. 2d 196 (D. Mass. 2012) ....................................................................................10

*Nat'l Fed'n of the Blind v. Scribd Inc.*,
97 F. Supp. 3d 565 (D. Vt. 2015)............................................................................................10

*National Fed'n of the Blind v. Target Corp.*,
452 F. Supp. 2d 946 (N.D. Cal. 2006) ...................................................................................11

*Noah v. AOL Time Warner, Inc.*,
261 F. Supp. 2d 532 (E.D. Va. 2003), *aff'd sub nom. Noah v. AOL-Time
Warner, Inc.*, No. 03-1770, 2004 WL 602711 (4th Cir. Mar. 24, 2004) ...................................8

*Norkunas v. Tar Heel Capital Wendy's LLC*,
No. 5:09-CV-00116, 2011 WL 2940722 (W.D.N.C. July 19, 2011) .....................................22

*Ouellette v. Viacom*,
No. CV 10–133–M–DWM–JCL, 2011 WL 1882780 (D. Mont. Mar. 31, 2011)..............10, 11

*Pallozzi v. Allstate Life Ins. Co.*,
198 F.3d 28 (2d Cir. 1999), *opinion amended on denial of reh'g*, 204 F.3d 392
(2d Cir. 2000).............................................................................................................................9

*Panzica v. Mas-Maz, Inc.*,
No. CV 05-2595 ARL, 2007 WL 1732123 (E.D.N.Y. June 11, 2007) ............................20, 24

*Parker v. Metro. Life Ins. Co.*,
121 F.3d 1006 (6th Cir. 1997) ..................................................................................................9

*PGA Tour. Inc. v. Martin*,
532 U.S. 661 (2001)..................................................................................................................13

*Rendon v. Valleycrest Productions, Ltd.*
m 294 F.3d 1279 (11th Cir. 2002) ..........................................................................................10

*Reno v. ACLU*,
521 U.S. 844 (1997)....................................................................................................................8

*Robinson v. Shell Oil Co.*,
519 U.S. 337 (1997).....................................................................................................................7

*Rodal v. Anesthesia Grp. of Onondaga, P.C.*,
369 F.3d 113 (2d Cir. 2004)......................................................................................................19

*Romanello v. Shiseido Cosmetics Am.*,
   No. 00 Civ. 7201, 2002 WL 31190169 (S.D.N.Y. Sept. 30, 2002)........................................19

*Rome v. MTA/N.Y. City Transit*,
   No. 97-CV-2945 (JG), 1997 WL 1048908 (E.D.N.Y. Nov. 18, 1997) ....................................9

*Samper v. Univ. of Rochester*,
   144 A.D.2d 940, 535 N.Y.S.2d 281 (4th Dep't 1988)...........................................................20

*Sharp v. Rosa Mexicano, D.C., LLC*,
   496 F. Supp. 2d 93 (D.D.C. 2007)........................................................................................22

*Sheely v. MRI Radiology Network, P.A.*,
   505 F.3d 1173 (11th Cir. 2007) ............................................................................................22

*Stevens v. Premier Cruises, Inc.*,
   215 F.3d 1237 (11th Cir. 2000) ..............................................................................................9

*Stoutenborough v. Nat'l Football League, Inc.*,
   59 F.3d 580 (6th Cir. 1995) ....................................................................................................9

*United States v. Jones*,
   136 F.3d 342 (4th Cir.1998) .................................................................................................21

*United States v. Nat'l Amusements, Inc.*,
   180 F. Supp. 2d 251 (D. Mass. 2001) ...................................................................................14

*Weyer v. Twentieth Century Fox Film Corp.*,
   198 F.3d 1104 (9th Cir. 2000) .................................................................................................9

**Statutes**

18 U.S.C. § 1367..........................................................................................................................24

29 U.S.C. § 794d..........................................................................................................................16

42 U.S.C. § 2000a-3.....................................................................................................................23

42 U.S.C. § 12181 *et seq.*....................................................................................................*passim*

42 U.S.C. § 12181(7)..................................................................................................................7, 9

42 U.S.C. § 12181(b)(2)...............................................................................................................13

42 U.S.C. § 12182..........................................................................................................................3

42 U.S.C. § 12186(b)....................................................................................................................13

42 U.S.C. § 12188(a)....................................................................................................................23

N.Y. Exec. Law § 290 *et seq.* ............................................................... *passim*

N.Y. Exec Law § 296(2)(a) ....................................................................... 19

N.Y. Civ. R. § 40 *et seq* ........................................................................ *passim*

N.Y. Civ. R. § 40–c .................................................................................. 19

N.Y.C. Admin. Code § 8-101 *et seq.* ..................................................... *passim*

N.Y.C. Admin. Code § 8-107(4)(a) .......................................................... 19

**Rules**

Federal Rule of Civil Procedure 12(b)(1) .......................................... 2, 21, 24

Federal Rule of Civil Procedure 12(b)(6) .......................................... 1, 4, 19, 24

**Other Authorities**

28 C.F.R. 36, Appendix A ............................................................. 8, 15, 16, 17

28 C.F.R. 36.101 ....................................................................................... 13

28 C.F.R. 36.104 ....................................................................................... 8

28 C.F.R. 36.213 ....................................................................................... 13

36 C.F.R. 1194 .......................................................................................... 16

Nondiscrimination on the Basis of Disability; Accessibility of Web Information
    and Services of Public Accommodations, 75 Fed. Reg. 43464 (proposed July
    26, 2010) ................................................................................... 8, 17, 18

*About W3C*, W3.ORG, https://www.w3.org/Consortium/ (last visited January 14,
    2017) ................................................................................................... 16

*Web Content Accessibility Guidelines 1.0*, W3.ORG, https://www.w3.org/TR/WAI-
    WEBCONTENT/ (last visited January 14, 2017) ...................................... 16

*Web Content Accessibility Guidelines 2.0*, W3.ORG,
    https://www.w3.org/TR/WCAG20/ (last visited January 14, 2017) ........... 17

U.S. Department of Justice, Civil Rights Division, *Accessibility of State and Local
    Government Websites to People with Disabilities* (2003),
    https://www.ada.gov/websites2_prnt.pdf ................................................. 16

MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/place
    (last visited January 15, 2017) ................................................................ 6

Department of Justice Statement of Regulatory Priorities (Fall 2015),
https://www.reginfo.gov/public/jsp/eAgenda/StaticContent/201510/Statement
_1100.html ..................................................................................................................18

*Technical Assistance Manual Covering Public Accommodations and Commercial
Facilities*, ADA.GOV, https://www.ada.gov/taman3.html (last visited January
13, 2017) ........................................................................................................................7

U.S. DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK OFFICIAL COURT
ELECTRONIC DOCUMENT FILING SYSTEM, https://ecf.nysd.uscourts.gov/cgi-
bin/iquery.pl (type "Marett" in the Last/Business Name field and "Lucia" in
the First Name field) ......................................................................................................3

The Defendant, RED LOBSTER HOSPITALITY, LLC ("Red Lobster" or the "Company"), hereby files its Memorandum of Law in Support of its Motion to Dismiss the Class Action Complaint (the "Complaint") filed by the Plaintiff, LUCIA MARETT ("Marett"), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).  For the reasons set forth below, Defendant respectfully moves this Court for an order dismissing Marett's Complaint.

## PRELIMINARY STATEMENT

In her Complaint, Marett, who claims she is legally blind, alleges that she was unable to purchase a gift card from Red Lobster's website.  Complaint, at ¶ 17.  As a result of this alleged incident, Marett now brings disability discrimination claims on behalf of herself and a purported nationwide class of similarly-situated individuals under Title III of the Americans with Disabilities Act ("Title III"), 42 U.S.C. § 12181 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; the New York State Civil Rights Law ("NYCRL"), N.Y. Civ. R. § 40 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

Marett's entire Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted under Title III and related New York law.  Title III, which prohibits discrimination on the basis of disability in places of public accommodation, only governs access to the goods and services available at *physical* facilities.  Because Marett has only alleged that she was denied access to a non-physical space, Red Lobster's website, her Complaint fails to state an essential element of her Title III claim – that she was denied the full and equal enjoyment of a place of public accommodation.  Even if Red Lobster's website is a place of public accommodation, which the Company maintains it is not, Marett does not allege, nor can she, that the website is in violation of *any* established regulations implementing Title III.  This is simply because no such regulations exist.  As a result,

Marett has not sufficiently pled that she was actually denied the full and equal enjoyment of Red Lobster's website in violation of the law. Because Marett has not pleaded the essential elements of a Title III cause of action, this claim must be dismissed for failure to state a claim. Marett's additional state and municipal law claims must also be dismissed, as these statutes are interpreted using the same standards that apply to Title III.

Moreover, Marett's Complaint should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Even though it is currently under no legal obligation to do so, Red Lobster has recently completed a large-scale website renovation effort – an effort undertaken prior to Marett filing this suit. *See generally* Declaration of Koshii Eslinger ("Eslinger Declaration").[1] As a result of this renovation, the website now complies with the non-mandatory industry guidelines that Marett contends govern website accessibility as to blind and visually impaired individuals. *Id.* Because Red Lobster has already removed the alleged "barriers" that Marett complains block the website's accessibility, Marett's claims based upon website inaccessibility are now moot. Consequently, Marett lacks standing to bring such moot claims, and her Complaint must be dismissed for lack of subject matter jurisdiction.

## FACTUAL BACKGROUND

Red Lobster owns and operates restaurant locations throughout the United States. Red Lobster also hosts a public website, redlobster.com (the "website"), which provides information to the public regarding its restaurant locations and menu offerings and allows users to purchase gift cards online.[2]

---

[1] The Declaration of Koshii Eslinger, dated February 2, 2016 ("Eslinger Declaration"), is submitted herewith in support of Red Lobster's Motion to Dismiss.

[2] Marett has relied upon and cited to www.redlobster.com in her Complaint and, therefore, Red Lobster submits that Marett has incorporated the website by reference into her Complaint. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference… Even where a document is not incorporated

Marett claims that she is a legally blind individual residing in New York. Complaint, at ¶¶ 16-17. Marett alleges that in October of 2016, she visited Red Lobster's website and attempted to purchase a $100 gift card. *Id.* at ¶ 17. She further contends, however, that she was unable to complete her purchase "due to the inaccessibility of the website," which she alleges "has many access barriers preventing blind people to independently navigate and complete a purchase using assistive computer technology." *Id.* at ¶¶ 17, 3. More specifically, Marett claims that the website contains the following "barriers:" lack of alt-text on graphics, inaccessible drop-down menus, lack of navigation links, lack of adequate prompting and labeling, denial of keyboard access, and the requirement that transactions be performed solely with a mouse. *Id.* at ¶ 40. As a result of these alleged barriers, Marett claims that Red Lobster has violated Title III, under which "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation," and related New York state and municipal law. 42 U.S.C. § 12182.[3]

Although Red Lobster has no *legal* obligation to make its website accessible to visually impaired individuals, it understands the growing importance of the Internet and the need for all individuals to have access to the website. This in mind, Red Lobster began a large-scale effort to renovate its website in March of 2016 – before it had any knowledge of Marett's lawsuit. *See* Eslinger Declaration, at ¶¶ 3, 6. Over the next several months, Red Lobster audited its website

---

by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal citations and quotations omitted).

[3] Since November 15, 2016, Marett has filed *fifteen* actions in this District alone, making identical allegations regarding the alleged accessibility of websites operated in connection with various restaurants, retail establishments, hotels, and musems. *See* U.S. DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK OFFICIAL COURT ELECTRONIC DOCUMENT FILING SYSTEM, https://ecf.nysd.uscourts.gov/cgi-bin/iquery.pl (type "Marett" in the Last/Business Name field and "Lucia" in the First Name field).

to determine its capabilities and researched appropriate consultants and experts to assist in making accessibility upgrades.  *Id.* at ¶ 4.  As part of this effort, Red Lobster utilized the services of an outside party skilled in digital design, Publicis Worldwide, to ensure that its website complies with non-mandatory accessibility guidelines established by the World Wide Web Consortium ("W3C").  *Id.* at ¶ 5.  Red Lobster expended great creative and financial resources to pursue this renovation, which was completed and launched to the public prior to the filing of this Motion.  *Id.* at ¶ 7.[4]

## LEGAL ARGUMENT

### I.   Marett's Claims Should Be Dismissed Pursuant To Rule 12(b)(6).

A motion to dismiss brought under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's complaint.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "[A] formulaic recitation of the elements of a cause of action will not do," and a plaintiff must plead more than "labels and conclusions."  *Twombly*, 550 U.S. at 555.  Courts must accept as true all of the factual allegations contained in the complaint when considering a Rule 12(b)(6) motion, but they are not bound to accept all of a plaintiff's legal conclusions.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

### A.   Marett Has Failed To State A Claim Upon Which Relief Can Be Granted Under Title III Of The ADA.

In order to state a claim for relief under Title III, a plaintiff must allege: (1) that he or she is disabled within the meaning of the ADA; (2) that the defendant owns, leases, or operates a

---

[4] Red Lobster's counsel specifically informed Marett's counsel about the website's renovation plans on November 21, 2016, *before* Marett filed her Complaint, explaining that the renovations would be complete in a matter of weeks.  Despite this, and later that same day, Marett proceeded in filing suit. This in mind, Marett filed her Complaint with *full knowledge* that the website would soon comply with all industry guidelines.

place of public accommodation to which the plaintiff has sought access; and (3) that the defendant has failed to provide the plaintiff equal access to the goods or services provided at such place of public accommodation. *See Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008). While Marett alleges that she has a disability under the ADA,[5] she has failed to plead facts sufficient to establish the second and third elements of her Title III claim. As an initial matter, Marett has not alleged that she attempted to access a place of public accommodation owned, leased, or operated by Red Lobster. Even if Marett had claimed that she had sought access to a place of public accommodation, which she has not, she has not sufficiently pled that Red Lobster failed to provide her with equal access to such a place. As a result, Marett's Complaint must be dismissed for failure to state a claim upon which relief can be granted.

### 1. Marett Has Not Alleged That She Sought Access To A Place Of Public Accommodation Owned Or Operated by Red Lobster.

The allegations in Marett's Complaint focus solely on the accessibility of Red Lobster's website. At no point, however, does Marett contend that the website itself is a place of public accommodation as defined by the ADA.[6] Because Marett has not alleged that the website is a place of public accommodation under the ADA, she has failed to plead an essential element of her Title III claim. Even if Marett had explicitly alleged that Red Lobster's website is a place of public accommodation, such a contention is nonetheless incorrect, as the ADA governs "solely access to physical, concrete places of public accommodation." *Access Now, Inc. v. Sw. Airlines, Co.*, 227 F. Supp. 2d 1312, 1318 (S.D. Fla. 2002).

---

[5] Marett has sufficiently pled that she has a disability as defined by the ADA. As such, and for purposes of this Motion only, Red Lobster will not question the factual accuracy of this allegation.

[6] Marett specifically asserts that Red Lobster's restaurant locations are places of public accommodation, but she does not allege that her access to any physical Red Lobster restaurant has been deterred in any specific way. Complaint, at ¶ 19. By contrast, Marett only refers to the website as "a public website service." *Id.* The term "public website service" is not defined or referenced in Title III and does not have the same legal meaning or import as the term "place of public accommodation."

> **i.      The Plain Language Of Title III And The DOJ's Implementing Regulations Clearly Limit The Term "Place Of Public Accommodation" To Physical Facilities.**

By its clear terms, Title III only applies to those who operate a *place* of *public accommodation*.  While the statute does not define the term "place," this word's meaning is unambiguous.    *See*     Merriam-Webster.com,     https://www.merriam-webster.com/dictionary/place (last visited January 15, 2017) (defining "place" as "a physical environment," "a particular region, center of population, or location to visit;" or "a building, part of a building, or area occupied").  The statute does, however, offer a clear and detailed definition of the term "public accommodation":

> The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce—
>
> **(A)** an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
> **(B)** a restaurant, bar, or other establishment serving food or drink;
> **(C)** a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
> **(D)** an auditorium, convention center, lecture hall, or other place of public gathering;
> **(E)** a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
> **(F)** a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
> **(G)** a terminal, depot, or other station used for specified public transportation;
> **(H)** a museum, library, gallery, or other place of public display or collection;
> **(I)** a park, zoo, amusement park, or other place of recreation;
> **(J)** a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
> **(K)** a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
> **(L)** a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

6

42 U.S.C. § 12181(7).   Notably, the word "place" is used repeatedly, and each of the twelve categories of public accommodation enumerated in the statute all refer to physical, brick-and-mortar establishments open to the public at a specific location.  *See Access Now*, 227 F. Supp. 2d at 1319 ("[T[he general term[]…'sales establishment' [is] limited to [its] correspondingly specifically enumerated terms, all of which are physical, concrete structures…").   Moreover, the ADA Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities not only makes clear that a place of public accommodation is limited to the twelve categories listed in the statute, but also equates the word "place" with physical "facilities":

> Can a facility be considered a place of public accommodation if it does not fall under one of these 12 categories? No, the 12 categories are an exhaustive list. However, within each category the examples given are just illustrations. For example, the category "sales or rental establishments" would include many facilities other than those specifically listed, such as video stores, carpet showrooms, and athletic equipment stores.

*ADA Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities*, ADA.Gov, https://www.ada.gov/taman3.html (last visited January 13, 2017).   Title III's unambiguous statutory language clearly indicates Congress' intent to limit the statute's reach to physical establishments. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (explaining court's inquiry "must cease if the statutory language is unambiguous").   Had Congress intended Title III to apply to all businesses offering goods and services to the public, it would have not have limited the defined list of public accommodations to only those offered at a "place."

The regulations issued by the Department of Justice (the "DOJ") to implement Title III reinforce the fact that places of public accommodation must be physical in nature.   The regulations define the term "place of public accommodation" as "a facility," which is further defined as "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock

or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located." 28 C.F.R. 36.104. This language makes clear that places of public accommodation are only those spaces accessible at a specific physical location.[7] A website, by contrast, is a purely virtual space that one "accesses" by requesting a web server to transmit certain data to his or her computer from another host source. *See Reno v. ACLU*, 521 U.S. 844, 851 (1997) (explaining Internet is "unique medium – known to its users as 'cyberspace' – located in no particular geographical location but available to anyone, anywhere in the world, with access to the Internet"). Websites are not accessible at a certain physical place or facility, and are thus not places of public accommodation under Title III. *See Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 544 (E.D. Va. 2003), *aff'd sub nom., Noah v. AOL-Time Warner, Inc.*, No. 03-1770, 2004 WL 602711 (4th Cir. Mar. 24, 2004) ("[A]lthough a chat room or other online forum might be referred to metaphorically as a 'location' or 'place,' it lacks the physical presence necessary to constitute a place of public accommodation under Title II [of the ADA].").

---

[7] Despite the clear meaning of its own definition, the DOJ has noted – in statements not subject to notice-and-comment rulemaking – that "[a]lthough the language of the ADA does not explicitly mention the Internet, the Department has taken the position that title III covers access to Web sites of public accommodations." 28 C.F.R. 36, Appendix A. Such informal statements, however, are simply not entitled to the force and effect of law. *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000). In this case, because the DOJ's statements are directly at odds with the language of the statute, they should be given no deference. *See Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613 (3d Cir. 1998) ("[S]uch an interpretation is 'manifestly contrary' to the plain meaning of Title III and, accordingly, is not binding on this court."); *see also Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 106 (2d Cir. 1999) ("[N]o deference is due to agency interpretations at odds with the plain language of the statute itself.") (internal citations and quotations omitted). Thus, the DOJ's statements indicating that Title III applies to websites simply cannot give rise to a cause of action under Title III. Regardless, the DOJ has been inconsistent in its own "position" and has admitted that there is "uncertainty regarding the applicability of the ADA to Web sites." *See* Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of Public Accommodations, 75 Fed. Reg. 43464 (proposed July 26, 2010); *see also* 28 C.F.R. 36, Appendix A (explaining that places of public accommodation may meet website accessibility obligations "by providing an accessible alternative for individuals to enjoy its goods and services, such as a staffed telephone information line").

> **ii.     The Majority Of Courts Addressing The Issue Have Held That Websites Are Not Places Of Public Accommodation Under Title III.**

The Second Circuit has not directly addressed the question of whether the term "place of public accommodation," as defined by Section 12181(7), includes non-physical spaces like websites. *See generally Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 32 (2d Cir. 1999), *opinion amended on denial of reh'g*, 204 F.3d 392 (2d Cir. 2000) (holding *only* that Title III requires places of public accommodation to provide more than mere physical access and not addressing distinct question of whether non-physical spaces can qualify as places of public accommodation).  But, the majority of circuit courts addressing the issue – the Third, Sixth, Ninth, and Eleventh Circuits, along with the Eastern District of New York – have all looked to the clear statutory language discussed above and limited Title III's reach to *physical* places of public accommodation.  *See Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1241 (11th Cir. 2000) ("Because Congress has provided such a comprehensive definition of 'public accommodation,' we think that the intent of Congress is clear enough."); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) (limiting term places of public accommodation to "actual, physical places where goods or services are open to the public"); *Ford v. Schering–Plough Corp.,* 145 F.3d 601, 612–14 (3d Cir. 1998) ("[W]e do not find the term 'public accommodation' or the terms in 42 U.S.C. § 12181(7) to refer to non-physical access or even to be ambiguous as to their meaning."); *Parker v. Metro. Life Ins. Co.,* 121 F.3d 1006, 1010–13 (6th Cir. 1997) ("As is evident by § 12187(7), a public accommodation is a physical place…); *Stoutenborough v. Nat'l Football League, Inc.*, 59 F.3d 580, 583 (6th Cir. 1995) (explaining that places of public accommodation are limited to physical "facilities"); *Rome v. MTA/N.Y. City Transit*, No. 97-CV-2945 (JG), 1997 WL 1048908, at *6 (E.D.N.Y. Nov. 18, 1997) (holding that "while such reasoning [including non-physical spaces as places of public

accommodation] may have a certain logic to it, it is contrary to the statute"). *But see Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12 (1st Cir. 1994); *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557 (7th Cir. 1999).

Following this majority view, a number of district courts have held that websites are not places of public accommodation and, consequently, that Title III claims based upon alleged inaccessibility of such websites must be dismissed. *See Cullen v. Netflix, Inc.,* 880 F. Supp. 2d 1017, 1023–24 (N.D.Cal. 2012) (holding that websites are not places of public accommodation because they are not physical places); *Earll v. eBay, Inc.,* No. 5:11–cv–00262–JF (HRL), 2011 WL 3955485, at *2 (N.D.Cal. Sept. 7, 2011) (noting that places of public accommodation are limited to physical places); *Ouellette v. Viacom,* No. CV 10–133–M–DWM–JCL, 2011 WL 1882780, at *4–5 (D. Mont. Mar. 31, 2011) (dismissing Title III claims against Google, YouTube, MySpace, and other purely online businesses). *But see Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 576 (D. Vt. 2015); *Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012). Because Marett has only alleged that she sought access to Red Lobster's website, which is not a place of public accommodation as clearly defined by the statute and correctly interpreted by the majority of circuit and district courts addressing the issue, Marett has failed to state a claim under Title III. As a result, her Complaint must be dismissed.

### iii.  Marett Has Failed To Save Her Complaint By Pleading A Sufficient Nexus Between Red Lobster's Website And Any Physical Red Lobster Restaurant.

While the majority of courts confronting the issue have determined that websites are not places of public accommodation, several courts have considered the possibility that a website which impairs one's access to a related physical establishment may run afoul of Title III. *See e.g., Rendon v. Valleycrest Productions, Ltd.*m 294 F.3d 1279, 1280-81, 1285 (11th Cir. 2002) (looking to nexus between remote technological eligibility process and access to "the privilege of

competing in a contest held *in a concrete space*") (emphasis added).  In these cases, courts ask not whether the allegedly offending website is itself a place of public accommodation, but instead focus on whether the website has impaired one's access to a related *physical* place of public accommodation.   Under this analysis, a Title III claim based upon alleged website inaccessibility can only stand if the website's inaccessibility prevents an individual's full and equal enjoyment of the goods and services available at a related physical establishment.   If a website has no effect on a disabled individual's ability to access the goods or services available at a related physical establishment, such a website cannot form the basis of a Title III claim. *Compare Jancik v. Redbox Automated Retail, LLC,* No. SACV 13–1387–DOC (RNBx), 2014 WL 1920751, at *8–9 (C.D. Cal. May 14, 2014) (holding that website was not place of public accommodation because there was not sufficient nexus between website and defendant's physical kiosks); *Ouellette*, 2011 WL 1882780, at *4–5 (holding that website by itself was not physical place and was not sufficiently connected to physical structure); *Access Now,* 227 F. Supp. 2d at 1319–21 (rejecting application of Title III to website because it was not physical location nor a means of accessing concrete space); *with National Fed'n of the Blind v. Target Corp.,* 452 F. Supp. 2d 946, 954-955 (N.D. Cal. 2006) (holding plaintiffs had alleged sufficient facts to state claim under Title III when plaintiff "alleged the inaccessibility of Target.com denie[d] the blind the ability to enjoy the services *of Target stores*") (emphasis added).

In her Complaint, Marett alleges that Red Lobster's website denied blind individuals "full and equal access to independently browse, select, and shop on Redlobster.com and by extension the goods and services offered through Defendant's website to Red Lobster Restaurants." Complaint, at ¶ 24.  In reality, however, Marett's Complaint *only* attacks the functionality of the website as an online shopping portal.   She in no way alleges that the website's alleged

inaccessibility has impaired her access to any goods or services – including gift cards – available at physical Red Lobster restaurants.  *See Twombly*, 550 U.S. at 555 (requiring plaintiffs to plead more than "labels and conclusions").  To the contrary, Marett's Complaint actually affirms the accessibility of Red Lobster's physical restaurants and explicitly states that blind individuals are able to access the goods and services available there.  Complaint, at ¶ 46.  Because Marett has failed to allege with particularity that Red Lobster's website has in any way denied her equal access to any physical place of public accommodation, she has failed to save her Title III claim from dismissal.

> **2.      Even If Red Lobster's Website Is A Place of Public Accommodation, Marett Has Not Alleged That Red Lobster Engaged In Any Conduct Made Unlawful By Title III.**

Even if non-physical spaces like websites are places of public accommodation under Title III, which Red Lobster maintains they are not, Marett has still failed to sufficiently state a claim for relief under the ADA.  It is not enough for a disabled plaintiff to allege that he or she sought access to a place of public accommodation; one must also claim that they were denied "full and equal enjoyment" of the goods and services offered there on the basis of a disability.  In other words, a plaintiff must allege that he or she was the victim of some type of disability discrimination as defined by Title III and the DOJ's implementing regulations.  Marett has not done so.

> **i.      Red Lobster Has Not Engaged In Unlawful Discrimination As Defined By Title III And The DOJ's Implementing Regulations.**

Title III lists the broad types of disability discrimination actionable under the statute, including "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities;" "a failure to take such steps as may be

necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services;" and "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities." 42 U.S.C. § 12181(b)(2).  In order to make a claim for disability discrimination under Title III, a plaintiff must allege that the defendant engaged in one of the prohibited actions described in the statute.  *See PGA Tour. Inc. v. Martin*, 532 U.S. 661, 681-82 (2001) (explaining that whether defendant has engaged in unlawful discrimination under Title III depends on whether defendant committed an act listed in Section 12181(b)(2)).

While the statute lists the broad categories of discrimination that are unlawful under Title III, it does not proscribe or mandate specific conduct.  Instead, Title III requires the DOJ to issue implementing regulations that establish accessibility standards and put covered entities on notice of their specific obligations under the law.  42 U.S.C. § 12186(b); *see also* 28 C.F.R. 36.101 (describing purpose of DOJ's regulations).  The DOJ has enacted such regulations, which delineate the particular obligations covered entities must fulfill or meet in order to ensure full access is provided to all individuals.  For example, Subpart C of the regulations, which establishes specific requirements, provides guidelines that directly correlate to the specific types of disability discrimination described in Section 12181(b)(2) – i.e., failure to modify policies, practices, and procedures; failure to provide auxiliary aids and services; and failure to remove access barriers.  When a plaintiff alleges a violation of a specific type of disability discrimination described in Section 12181(b)(2), the court must assess a defendant's liability based upon its compliance with the guidelines set out in Subpart C alone. *See* 28 C.F.R. 36.213 (explaining relationship between regulations' general and specific provisions).  To this end, absent a violation of a specific guideline established in the regulations, a plaintiff cannot state a claim

13

under Title III.  *United States v. Nat'l Amusements, Inc.*, 180 F. Supp. 2d 251, 258-260 (D. Mass. 2001) ("The Attorney General argues that because the Cinemas' theaters are in violation of these general regulatory provisions, he should be able to state a claim…absent a violation of a specific regulation…The Court disagrees.").   In other words, if a place of public accommodation complies with the DOJ's regulations, it has fulfilled its obligations under Title III.  As a result, in order to properly advance a claim under Title III, a plaintiff must plead that (and how) the defendant has violated a specific DOJ's regulation.  Marett has done neither here, and as a result her Complaint does not properly state a claim under Title III.

In her Complaint, Marett claims that Red Lobster has violated the ADA due to its website's lack of alt-text on graphics, inaccessible drop-down menus, lack of navigation links, lack of adequate prompting and labeling, denial of keyboard access, and requirement that transactions be performed solely with a mouse. Complaint, at ¶ 40.  Throughout her Complaint, Marett uses inconsistent language to classify such allegedly offending conduct.  Most often, she claims that the website's alleged flaws constitute "access barriers."  *Id.* at  ¶¶ 1, 3, 10, 24, 26, 35. In addition, though, Marett also suggests that Red Lobster has failed to make reasonable modifications in its policies, practices, or procedures and failed to utilize auxiliary aids and services.  *Id.* at ¶¶ 59-60.  As each of these claims involves alleged violations of the specific types of discrimination described in Section 12182(b)(2), the Court can only assess Red Lobster's potential liability by looking solely at its compliance with the corresponding specific requirements laid out in Subpart C of the DOJ's regulations – i.e., those addressing reasonable modifications, provision of auxiliary aids, and removal of barriers.

Unfortunately for Marett, the existing regulations contain *no* provisions governing the accessibility of websites or online content.   In fact, in 2010, the DOJ admitted as much,

explaining that it had been "unable to issue specific regulatory language on Website accessibility." 28 C.F.R. 36, Appendix A.  As the Southern District of Florida warned:

> Where Congress has created specifically enumerated rights and expressed the intent of setting forth "clear, strong, consistent, enforceable standards," courts must follow the law as written and wait for Congress to adopt or revise legislatively-defined standards that apply to those rights. Here, to fall within the scope of the ADA as presently drafted, a public accommodation must be a physical, concrete structure. To expand the ADA to cover "virtual" spaces would be to create new rights without well-defined standards.

*Access Now*, 227 F. Supp. 2d at 1318.  As neither Title III nor the DOJ's implementing regulations address website accessibility in any fashion (let alone create well-defined accessibility standards), Marett has failed to allege that Red Lobster engaged in any unlawful conduct.  As a result, Marett has failed to plead the third element of her Title III claim, and her Complaint must therefore be dismissed.

> ii. **Non-Binding Guidance Mentioned Or Issued By The DOJ Does Not Create An Actionable Cause Of Action Under Title III.**

Red Lobster anticipates that Marett will point to some informal DOJ statement or guidance as creating obligations for places of public accommodation in addition to those found in the regulations.  Any such informal agency position, however, does not and cannot give rise to an actionable cause of action under Title III.

> a. **Neither The DOJ's Regulations Applicable To Federal Agencies, Nor WCAG, Are Binding On Places Of Public Accommodation.**

In an appendix published along with the DOJ's 2010 revisions to its implementing regulations, the agency noted that it had not "issue[d] specific regulatory language on Website accessibility." 28 C.F.R. 36, Appendix A (the "appendix").  In this same appendix, however, the DOJ mentioned two sources of *non-binding* website accessibility *guidance* – the DOJ's regulations as to federal agencies and the guidelines published by the Web Accessibility

15

Initiative (the "WAI").   Neither of these sources of guidance is binding on places of public accommodation.

First, the appendix references the Electronic and Information Technology Accessibility Standards issued pursuant to Section 508 of the Rehabilitation Act of 1973, which require federal agencies to make their websites accessible to disabled individuals. 28 C.F.R. 36, Appendix A; *see* 29 U.S.C. § 794d; 36 CFR 1194 (establishing regulations); *see also* U.S. Department of Justice, Civil Rights Division, *Accessibility of State and Local Government Websites to People with Disabilities* (2003), https://www.ada.gov/websites2_prnt.pdf.   While these regulations impose binding requirements on federal agencies, they create *no* obligations for private entities operating places of public accommodation.   Moreover, it is telling that while Congress has explicitly instructed federal agencies to make their websites accessible and the DOJ has established specific regulations regarding such accessibility, neither Congress nor the DOJ has placed the same burden on places of public accommodation under Title III.

The appendix also informs readers that "[a]dditional guidance is available in the Web Content Accessibility Guidelines (WCAG)...which are developed and maintained by the Web Accessibility Initiative, a subgroup of the World Wide Web Consortium (W3C)."  28 C.F.R. 36, Appendix A.  These guidelines are similarly not mandatory.  For one, WCAG was developed by a private industry "international community where Member organizations, a full-time staff, and the public work together to develop Web standards." *About W3C*, W3.ORG, https://www.w3.org/Consortium/ (last visited January 14, 2017).  The initial version of WCAG was self-dubbed a "reference document for accessibility principles," and WCAG 2.0 makes clear that its guidelines are merely "recommendations." *Web Content Accessibility Guidelines 1.0*, W3.ORG, https://www.w3.org/TR/WAI-WEBCONTENT/ (last visited January 14, 2017); *Web*

*Content Accessibility Guidelines 2.0*, W3.ORG, https://www.w3.org/TR/WCAG20/ (last visited January 14, 2017). These disclaimers in mind, the WAI's guidelines are merely meant to assist people in their understanding of web accessibility and do not create binding requirements. *See* Complaint, at ¶ 39 (admitting that WAI's guidelines merely "recommend" accessibility standards).   Congress empowered the DOJ to implement regulations having the force of law under Title III, but did not empower private interest groups and international volunteers to do the same.

Just as the Section 508 accessibility standards and WCAG do not place binding obligations on places of public accommodation, the DOJ's reference to either does not somehow transmute such non-binding guidance into mandatory rules under Title III.   *See Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters — like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law — do not warrant *Chevron*-style deference."); *AFSCME v. Am Int'l Grp., Inc.*, 462 F.3d 121, 126 (2d Cir. 2006) (stressing that courts are not to defer to informal agency positions that are contrary to their own regulations); *EEOC v. Staten Island Sav. Bank*, 207 F.3d 144, 151-52 (2d Cir. 2000) (declining to defer to informal agency guidance in tension with previous agency interpretation).   Moreover, the DOJ has been inconsistent its own "position" in regards to such "guidance" and has admitted there is "uncertainty regarding the applicability of the ADA to Web sites." *See* Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of Public Accommodations, 75 Fed. Reg. 43464 (proposed July 26, 2010); *see also* 28 C.F.R. 36, Appendix A (explaining that places of public accommodation may meet website accessibility obligations "by providing an accessible alternative for individuals to enjoy its goods and services, such as a staffed telephone

17

information line").   Accordingly, places of public accommodation covered by Title III are not bound to follow – and cannot be held liable for alleged violations of – either the Section 508 accessibility standards or WCAG.

> **b.    The DOJ's ANRP Does Not Create New Obligations For Places Of Public Accommodation.**

In July of 2010, the DOJ issued an Advanced Notice of Proposed Rulemaking ("ANRP"), in which it explained that it was "*considering* revising the regulations implementing title III of the ADA in order to establish requirements for making the goods, services, facilities, privileges, accommodations, or advantages offered by public accommodations via the Internet, specifically at sites on the World Wide Web ('Web') accessible to individuals with disabilities." 75 Fed. Reg. 43460 (emphasis added). The ANRP did not set forth any proposed regulations or guidelines but simply indicated its desire to eradicate "remaining uncertainty regarding the applicability of the ADA to Web sites of entities covered by title III" and "make clear to entities covered by the ADA their obligations to make their Web sites accessible." 75 Fed. Reg. 43464.  In this ANRP, the DOJ requested "public comments regarding what standards, *if any*, it should adopt for web site accessibility." Department of Justice Statement of Regulatory Priorities (Fall 2015), https://www.reginfo.gov/public/jsp/eAgenda/StaticContent/201510/Statement_1100.html);   *see also* 75 Fed. Reg. 43464.  Despite issuing the ANRP and collecting comments from the public nearly seven years ago, the DOJ has yet to take the next step in enacting an official regulation addressing website accessibility – issuing a Notice of Proposed Rulemaking ("NPRM").  After several delays, the DOJ indicated, under the Obama Administration, that it does not expect to publish a related NPRM until 2018 *at the earliest*.  It is unclear what action – if any – the Trump Administration will take in regards to the ANRP.

While the ANRP may indicate the DOJ's plans to promulgate binding regulations in the future, it in no way imposes *present* obligations on places of public accommodation. To the contrary, the ANRP explicitly explains that the DOJ has yet to adopt regulations regarding website accessibility applicable to places of public accommodation and even questions whether it should adopt regulations in the first place. As a result, the ARNP does not presently create any obligations for places of public accommodation in regards to website accessibility.

### 3.    Marett Has Failed To State a Claim Upon Which Relief Can Be Granted Under The NYSHRL, The NYCRL, And The NYCHRL.

In addition to her Title III claim, Marett also brings claims under the NYSHRL,[8] the NYCRL,[9] and the NYCHRL.[10] All three of these claims should also be dismissed under Rule 12(b)(6) for failure to state a claim.

New York state disability discrimination claims are governed by the same legal standards as federal ADA claims. *Rodal v. Anesthesia Grp. of Onondaga, P.C.,* 369 F.3d 113, 117 n.1 (2d Cir. 2004); *see also Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 26 (2d Cir. 2014); *Romanello v. Shiseido Cosmetics Am.,* No. 00 Civ. 7201, 2002 WL 31190169, at *7 (S.D.N.Y. Sept. 30, 2002). As a result, claims made regarding the accessibility of places of public accommodation under the NYSHRL and the NYCRL are interpreted using the same standards as those made under Title III. *Hartnett v. Fielding Graduate Institute,* 400 F. Supp. 2d 570, 581 (S.D.N.Y. 2005) ("Claims for disability discrimination arising under the New York State Human

---

[8] NYSHRL, N.Y. Exec Law § 296(2)(a), provides that: "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability ... of any person ... directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof...."

[9] NYCRL, N.Y. Civ. Rights § 40–c provides that "[n]o person shall, because of ... disability ... be subjected to any discrimination in his or her civil right ... by any other person or by any firm, corporation or institution."

[10] NYCHRL, Admin. Code of City of N.Y. § 8–107(4)(a), provides that: "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of the actual or perceived ... disability ... of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, or, directly or indirectly."

Rights Law or New York Civil Rights Law § 40-c are governed by the same legal standards as federal ADA claims."); *see also Bebry v. ALJAC LLC*, 954 F. Supp. 2d 173, 176 (E.D.N.Y. 2013); *Panzica v. Mas-Maz, Inc.*, No. CV 05-2595 ARL, 2007 WL 1732123, at *2 n.1 (E.D.N.Y. June 11, 2007); *Samper v. Univ. of Rochester,* 144 A.D.2d 940, 535 N.Y.S.2d 281 (4th Dep't 1988).  Therefore, because Marett has failed to state a claim for relief under Title III, she has also failed to state a claim under the NYSHRL and the NYCRL.

When considering claims brought under the NYCHRL, courts must engage in an independent legal analysis separate and distinct from that completed in regards to other claims. *Brooklyn Ctr. for Indep. of Disabled v. Bloomberg*, 980 F. Supp. 2d 588, 642 (S.D.N.Y. 2013).  However, a number of district courts, in conducting such independent analyses, have determined that the same standards apply to claims brought under the ADA and the NYCHRL.  *See Brooklyn Ctr. for Indep. of Disabled v. Bloomberg*, 980 F. Supp. 2d 588, 643 (S.D.N.Y. 2013); *Kreisler v. Second Ave. Diner Corp.,* No. 10 Civ. 7592(RJS), 2012 WL 3961304, at *14 (S.D.N.Y. Sept. 11, 2012) (applying same standard under ADA and NYCHRL where parties had provided no reason to believe standards under two laws were different for purposes of case at issue).  This is especially likely when plaintiffs plead identical claims under the NYSHRL and another similar anti-discrimination statute.  *See Broderick v. Research Found. of State Univ. of N.Y.*, No. 10-CV-3612 JS ETB, 2010 WL 3173832, at *2 (E.D.N.Y. Aug. 11, 2010) (analyzing identical claims brought under ADA, NYSHRL, and NYCHRL and explaining "[r]egardless of the statute sued under, the same standards apply").  In this case, Marett's allegations under the NYCHRL are identical to those brought under Title III and New York state law.  As a result, because she has failed to state a claim for relief under any of those statutes, she has also failed to state a claim under the NYCHRL.

## II.     Marett's Claims Should Be Dismissed Pursuant To Rule 12(b)(1).

Even if Marett's Complaint does state a claim upon which relief can be granted, which Red Lobster maintains it does not, this action should still be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).  "A case is properly dismissed … for lack of subject matter jurisdiction when the district court lacks the constitutional or statutory power to adjudicate it. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Courts may consider evidence found outside the pleadings when ruling on a motion to dismiss for lack of subject matter jurisdiction.  *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) ("We may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue.").

### 1.     Marett's Claims Are Moot.

When "the question sought to be adjudicated has been mooted by subsequent developments," the case in question must be dismissed.  *Flast v. Cohen,* 392 U.S. 83, 95 (1968). It is also well established, however, that "the voluntary discontinuance of challenged activities by a defendant does not necessarily moot a lawsuit," as defendants are hypothetically able to return to their unlawful ways following a lawsuit's dismissal.  *United States v. Jones,* 136 F.3d 342, 348 (4th Cir.1998) (citing *Iron Arrow Soc'y v. Heckler,* 464 U.S. 67, 71–72 (1983)).

An exception to this general rule against mooting cases as a result of a defendant's voluntary cessation exists when there is "no reasonable expectation that the wrong will be repeated." *Id.* The Supreme Court has established a two-factor test to determine whether a defendant has met this burden.  Under this test, a defendant must establish: (1) that "there is no reasonable expectation that the alleged violation will recur;" and (2) that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violations."  *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979).  In assessing whether this so-called *Davis* standard has been met, courts consider a number of relevant factors, including: "(1) whether the

challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1183 (11th Cir. 2007).

Under this framework, federal courts have dismissed Title III claims as moot when the alleged violations have been remedied after the initial filing of a suit seeking injunctive relief. *Nat'l All. for Accessibility, Inc. v. Walgreen Co.*, No. 3:10-CV-780-J-32-TEM, 2011 WL 5975809, at *3 (M.D. Fla. Nov. 28, 2011); *Norkunas v. Tar Heel Capital Wendy's LLC*, No. 5:09-CV-00116, 2011 WL 2940722, at *4 (W.D.N.C. July 19, 2011); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1130 (C.D. Cal. 2005); *Brenchley v. Vill. of Phoenix*, No. 5:01 CV 0190, 2005 WL 2437027, at *4 (N.D.N.Y. Sept. 30, 2005) ("It is undisputed that any apparent violation of the ADA by the Village has been definitively remedied to the satisfaction of the Department of Justice. Consequently, plaintiff's request for declaratory relief, to the extent he is deemed to have raised one, must be dismissed."); *see also Hernandez v. Berlin Newington Assocs., LLC*, No. 3:10CV1333 DJS, 2015 WL 418128, at *2 (D. Conn. Jan. 30, 2015) (explaining that "a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim") (internal citations and quotations omitted).  In dismissing cases, courts generally find that "alleged discrimination cannot reasonably be expected to recur" when structural modifications have been made because such "modifications are unlikely to be altered in the future." *Sharp v. Rosa Mexicano, D.C., LLC,* 496 F. Supp. 2d 93, 99 (D.D.C. 2007).

In this case, despite having no legal obligation to do so, Red Lobster began a large-scale renovation effort in March of 2016 to ensure that its website is accessible to all individuals,

including the blind and visually impaired.   *See* Eslinger Declaration, at ¶ 3.     Red Lobster expended significant time and resources to complete this renovation in a timely manner.   To successfully effectuate this renovation, the Company utilized the services of a reputable third party company skilled in creating accessible websites that comply with WCAG.   *Id.* at ¶ 5. These thorough efforts have been both time-consuming and expensive, but they have resulted in a website that, as of the filing of this Motion, meets WCAG's model guidelines.[11]  *Id.* at ¶ 7.

It is unreasonable to contend that Red Lobster would spend significant time and financial resources renovating its website only to revert back to using any allegedly non-compliant former layout or features upon this suit's dismissal.   Moreover, Red Lobster began upgrading its website *before* Marett initially threatened to file suit. *Id.* at ¶ 6.  Thus, the website was renovated out of Red Lobster's desire to go beyond what current laws and regulations require and make its website more accessible to all individuals – *not* as an attempt to avoid or in response to Marett's lawsuit. This in mind, the alleged discrimination cannot reasonably be expected to recur and, consequently, Marett's claims under Title III (which provides for injunctive relief only) and related New York state and municipal law (to the extent she seeks injunctive relief under those statutes) are now moot.   *See* 42 U.S.C. § 12188(a); 42 U.S.C. § 2000a-3.  As a result, this Court lacks subject matter jurisdiction over Marett's claims for injunctive relief, which must be dismissed.  *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) ("[W]hen a case becomes moot, the federal courts lack subject matter jurisdiction over the action.") (internal citations and quotations omitted).

---

[11] In her Complaint, Marett indicates that compliance with WCAG equals compliance with her interpretation of Title III.  Complaint, at ¶ 39.

2.    **The Court Does Not Have Supplemental Jurisdiction Over Marett's State Law Claims Seeking Money Damages.**

Given that Marett's claims for injunctive relief are moot, the only claims that remain are her claims under New York state and municipal law, which provide for various forms of compensatory and statutory damages.  Because the only federal claim to this action must be dismissed on mootness grounds, the court no longer has supplemental jurisdiction over the remaining state and municipal claims.  *Panzica*, 2007 WL 1732123, at *10.  As a result, Marett's remaining claims must also be dismissed.  *See, e.g.*, 18 U.S.C. § 1367.

## CONCLUSION

Red Lobster respectfully requests that this Court dismiss all of Plaintiff's claims against it with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or Federal Rule of Civil Procedure 12(b)(1).

24

Dated:      February 2, 2017                **BAKER & HOSTETLER LLP**
            New York, New York

/s/ Amy J. Traub
Amy J. Traub
atraub@bakerlaw.com
Amanda L. Van Hoose Garofalo
agarofalo@bakerlaw.com
45 Rockefeller Plaza
New York, New York 10111
Tel: 212 589-4200
Fax: 212 589-4201

Joyce Ackerbaum Cox
jacox@bakerlaw.com
(*pro hac vice* to be filed)
Mary Caroline Miller
mcmiller@bakerlaw.com
(*pro hac vice* to be filed)
200 S. Orange Avenue
Ste. 2300
Orlando, FL 32801
Tel: 407 649-4000
Fax: 407 841-0168

Attorneys for *Red Lobster Hospitality, LLC*

## **CERTIFICATE OF SERVICE**

I, Amy J. Traub, hereby certify that on February 2, 2017, a true and correct copy of the foregoing Memorandum of Law in Support of Defendant's Motion to Dismiss was served on all counsel of record via the Court's ECF system.

/s/ Amy J. Traub
Amy J. Traub